**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

RICHARD H., II,

                              Plaintiff,

    v.                                                  No. 6:24-CV-1146
                                                        (PJE)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                                OF COUNSEL:

The Law Offices of                          STEVEN R. DOLSON, ESQ
Steven R. Dolson, PLLC
6320 Fly Road, Suite 201
East Syracuse, New York 13057
Attorneys for plaintiff

Social Security Administration              GEOFFREY M. PETERS, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

Richard H., II[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB"). *See*

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73. L.R. 72.2(b), L.R. 72.3(b), and General Order 18. *See* Dkt. No. 3.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

Dkt. No. 1.  Plaintiff moved for the Commissioner's decision to be reversed and remanded for further proceedings. *See* Dkt. No. 11.  The Commissioner moved for the decision to be affirmed.   *See* Dkt. No. 16.[3]   For the following reasons, plaintiff's cross-motion is denied, the Commissioner's cross-motion is granted, and the Commissioner's decision is affirmed.[4]

## I.  **Background**

On May 4, 2022, plaintiff filed a Title II application for DIB, alleging a disability onset date of November 10, 2020.  *See* T. at 212-16[5] (*See* Dkt. No. 8-5)[6].  On September 1, 2022, the Social Security Administration ("SSA") denied plaintiff's claim.  *See id*. at 95-100 (*See* Dkt. No. 8-4).  Plaintiff sought reconsideration, which the SSA denied on March 10, 2023. *See id*. at 112-20 (*See* Dkt. No. 8-4).  Plaintiff appealed and requested a hearing. *See id*. 121-22 (*See* Dkt. No. 8-4).  On November 9, 2023, a hearing was held before Administrative Law Judge ("ALJ") Jeremy Eldred. *See id*. 35-55 (*See* Dkt. No. 8-2).  On December 14, 2023, the ALJ issued a partially-favorable decision. *See id*. 17-27 (*See* Dkt. No. 8-2). On July 24, 2024, the Appeals Council affirmed the ALJ's determination, and the decision became final. *See id*. 1-6 (*See* Dkt. No. 8-2).  Plaintiff commenced this action on September 20, 2024. *See* Dkt. No. 1.

## II.  **Legal Standards**

---

[3] This matter has been treated in accordance with General Order 18. Under that General Order, once an issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[4]   This case was reassigned on September 18, 2026.  *See* Dkt. No. 17.

[5] "T." followed by a number refers to the pages of the administrative transcript. *See* Dkt. No. 8. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page. Citations to the parties' briefs refer to the pagination located at the header of the documents, generated by the Court's electronic filing program.

[6] Due to the administrative transcript being docketed in many separate parts, in addition to the record citation, the Court will include the specific docket cite for factual citations.

A. **Standard of Review**

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id.* (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotation marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such

finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id.* (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

## B.  **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  *Id.* § 423(d)(1)(A).  "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience." *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)).  "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'"  *Id.* (citing 42 U.S.C. § 423(d)(3)).  "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'"  *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

4

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . . .

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)). "The plaintiff bears the initial burden of proof to establish each of the first four steps." *Id.* (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)). "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere." *Id.* (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

## III. **The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ first noted that plaintiff had "not engaged in substantial gainful activity since December 1, 2020, the

alleged onset date of disability." T. at 19 (*See* Dkt. No. 8-2). At step two, the ALJ found that

> [s]ince the alleged onset date of disability, December 1, 2020, the claimant has had the following "severe" impairments: degenerative changes of the lumbar spine and obesity. The following additional impairments became "severe" after August 19, 2021, the established onset date of disability: tenosynovitis of the right ring finger and right long finger, left cubital tunnel syndrome, degenerative disc disease of the thoracic spine, and stenosis of the cervical spine.

*Id.* (*See* Dkt. No. 8-2). At step three, the ALJ determined, "[s]ince December 1, 2020, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 20 (*See* Dkt. No. 8-2).

Before reaching step four, the ALJ divided plaintiff's disability claim into two time periods. The ALJ concluded, "prior to August 19, 2021, the date the claimant became disabled," plaintiff had the residual functional capacity ("RFC") to "perform the full range of sedentary work[7] as defined in 20 CFR 404.1567(a)." T. at 21 (*See* Dkt. No. 8-2). The ALJ also concluded that since August 19, 2021, plaintiff retained the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a), except he can lift and/or carry a maximum total of less than ten pounds occasionally, can sit for a maximum total of less than six hours in an eight-hour workday, and can stand and/or walk for a maximum total of less than two hours in an eight-hour workday.

---

[7] Sedentary work is defined as

> involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

*Id.* at 24 (*See* Dkt. No. 8-2). At step four, the ALJ determined, "[s]ince December 1, 2020, the claimant has been unable to perform any past relevant work." *Id.* at 26 (*See* Dkt. No. 8-2).

Before reaching step five, the ALJ noted:

[p]rior to August 19, 2021, transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills. Beginning on August 19, 2021, the claimant has not been able to transfer job skills to other occupations within his [RFC].

T. at 26 (*See* Dkt. No. 8-2). At step five, the ALJ determined that (1) "[p]rior to August 19, 2021, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed," *id.* (*See* Dkt. No. 8-2); and (2) "[b]eginning on August 19, 2021, considering the claimant's age, education, work experience, and residual functional capacity, there are not jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 27 (*See* Dkt. No. 8-2). The ALJ concluded that plaintiff "was not disabled prior to August 19, 2021, but became disabled on that date and has continued to be disabled through the date of this decision." *Id.* (*See* Dkt. No. 8-2).

## IV. **Discussion**

### A. **Arguments**

Plaintiff argues that the ALJ's RFC determination for the period prior to August 19, 2021, is not supported by substantial evidence because the ALJ erred in not considering his bending and stooping limitations. *See* Dkt. No. 11 at 4-7. Plaintiff contends that for the period prior to August 19, 2021, the ALJ did not (1) consider how "utilizing a back

7

brace [] would logically hinder [his] ability to engage in stooping activity[,]" or (2) "give any reasoning for not adopting any of the medical source statements concerning [his] ability to stoop [or] bend." *Id*. at 7.  Plaintiff also claims that the ALJ improperly "utiliz[ed] the medical vocational guideline directly rather than using it as a framework for decision making with citation to authority that shows that the non-exertional limitations have a minimal impact on the occupational base," in violation of Social Security Ruling ("SSR") 96-9p. *Id*.

The Commissioner argues that the ALJ's decision is supported by substantial evidence.  *See* Dkt. No. 16 at 6-13.  The Commissioner contends that plaintiff's arguments regarding bending and stooping must fail because this Court has already determined that "a sedentary RFC, . . . by definition entails no bending or stooping."  *Id*. at 6 (quoting *James L. E. v. Comm'r of Soc. Sec.*, 758 F. Supp. 3d 5, 28 (N.D.N.Y. 2024) (citing SSR 83-10, 1983 WL 31251 at *5)).  The Commissioner claims that plaintiff's reliance on SSR 96-9p is misplaced because it "explains [that] a limitation to occasional stooping would 'only minimally erode the unskilled occupational base of sedentary work[,]'" and plaintiff has not claimed "that he cannot occasionally stoop (or even specified what level of stopping he can supposedly perform)."  *Id*. at 6-7 (first quoting SSR 96-9p, 1996 WL 37418, at *8; then citing Dkt. No. 11 at 6-7).  Alternatively, the Commissioner argues that the plaintiff's claims constitute a disagreement with the weight of the evidence and it is improper for the Court to reweigh the evidence.  *See id*. at 7-13.

## B.  **RFC**

"RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and

other limitations beyond the symptoms." *Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *Malcolm M. v. Comm'r of Soc. Sec.*, No. 1:17-CV-986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (first citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999), then citing 20 C.F.R. §§ 404.1545, 416.945))). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Id.* (quoting *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2))). "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." *Id.* (quoting *Martone*, 70 F. Supp. 2d at 150 (citations omitted)).

"In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources." *Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)). "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id.* (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). "The Court 'defer[s] to the Commissioner's resolution of conflicting evidence[.]'" *Id.* (quoting *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (internal citation omitted)). "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question; rather, [the Court] must decide whether substantial

evidence supports the ALJ's decision." *Id*. (quoting *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at \*4 (N.D.N.Y. Feb. 18, 2022)) (internal quotation marks and citation omitted).  "The ALJ must not ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence, but [t]he Court will not reweigh the evidence that was before the ALJ."  *Id*. (quoting *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at \*6 (N.D.N.Y. Sept. 27, 2019) (internal quotation marks and citations omitted)).

## 1.  **Period Before August 19, 2021**

As recounted above, the ALJ found that prior to August 19, 2021, plaintiff had the RFC "to perform the full range of sedentary work."  T. at 20 (citing 20 C.F.R. §§ 404.1567(a), 416.967(a)).  Plaintiff claims that the ALJ failed to account for his bending and stooping limitations.  *See* Dkt. No. 11 at 4-7.

For SSA purposes, stooping is defined as "bending the body downward and forward by bending the spine at the waist."[8]  SSR 85-15, 1985 WL 56857, at \*7.  "By its very nature, work performed primarily in a seated position entails no significant stooping."  SSR 83-10, 1983 WL 31251 at \*5.  Moreover, "[i]f a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." SSR 85-15, 1985 WL 56857 at \*7, *see also* SSR 96-9p, 1996 WL 374185 at \*8 (noting that a claimant's "restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work"); *Davis v. Astrue*, No. 09 CIV. 4006 (KBF), 2013 WL 3388951, at \*15 (S.D.N.Y. July

---

[8] SSR 85-15 addresses the postural impairments of stooping, kneeling, crouching, and crawling, but does not consider bending.  *See* SSR 85-15, 1985 WL 56857, at \*7.  SSR 85-15 provides that "[s]tooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending." *Id*.

10

8, 2013) (concluding that "the inability to bend on a repetitive basis is not inconsistent with a residual functional capacity for the full range of sedentary work.") (additional citations omitted).  "In other words, an RFC to perform 'sedentary work' implicitly – if not explicitly – includes a mild-moderate limitation in bending/stooping."  *Caridad H. v. Comm'r of Soc. Sec.*, No. 5:18-CV-893 (TWD), 2019 WL 3253228 at \*5 (N.D.N.Y. July 19, 2019).

In support of his alleged inability to stoop or bend, plaintiff claims that he had a spinal deformity, underwent spinal fusion surgery, and was prescribed a lumbosacral orthosis back brace post-surgery.[9]  Dkt. No. 11 at 5-6 (citing T. at 360, 673, 713) (*See* Dkt. No. 8-7). Plaintiff also cites to state agency consultative medical examiner Gilbert Jenouri, M.D.'s opinion that plaintiff has a "moderate restriction" in bending, and the prior administrative medical finding ("PAMF") of J. Meyer, M.D. that he could frequently stoop. T. at 63, 366 (*See* Dkt. Nos. 8-3, 8-7).

The Court concludes that plaintiff's arguments lack merit.  *See Reyes v. Comm'r of Soc. Sec.*, No. 21 Civ. 372 (AEK), 2022 WL 4482543 at \* 16 (S.D.N.Y. Sept. 27, 2022) (quoting SSR 96-9P, 1996 WL 374185, at \*8 ("A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work.").  As an initial matter, plaintiff's arguments are factually incorrect.  The ALJ did consider plaintiff's November 2020 spinal fusion surgery and the opinions of Drs. Jenouri and Meyer.  *See* T. at 21-23 (*See* Dkt. No. 8-2).  Similarly, plaintiff does not reconcile his

---

[9] The Court notes that on November 24, 2020, plaintiff was advised to continue using a lumbosacral orthosis back brace, but it is unclear whether this assistive device was prescribed or ordered.  *See* T. at 711-14 (*See* Dkt. No. 8-7).

alleged spinal deformity or temporary use of a back brace with his purported inability to bend or stoop. *See* Dkt. No. 11 at 5-6. The medical records plaintiff cites to support this assertion list his medical symptoms and diagnoses, but the medical providers do not translate those findings into limitations, including any limitation in his ability to bend or stoop. *See id*. (citing T. at 360, 673, 713, 720) (*See* Dkt. No. 8-7).

Further, the evidence the ALJ cites supports a finding that plaintiff was not significantly limited in his ability to bend or stoop. The ALJ found that plaintiff experienced "several months of modest improvement" in both his "pain level and ability to function" in the months following his November 2020 spinal fusion surgery.[10] T. at 21 (*See* Dkt. No. 8-2). The ALJ also discussed a May 24, 2021, consultative physical examination report that stated that, although plaintiff "had an antalgic gait, . . . decreased range of motion in the lumbar spine, . . . and reduced range of motion in his hips," plaintiff "was in no acute distress, used no assistive devices, needed no help changing for the examination or getting on and off of the examination table, rose from a chair without difficulty, . . . had no sensory deficits, had 5/5 strength, and had no muscle atrophy." *Id*. (citing T. at 364-68) (*See* Dkt. Nos. 8-2, 8-7).

---

[10] More specifically, the ALJ noted:

> treatment records dated December 21, 2020, state that the claimant was doing well overall, despite occasional pain with increased activity (Exhibit 5F, page 48). In March 2021, the claimant reported lower back pain with increased activity, but otherwise felt much better since surgery (Exhibit 5F, page 56). At that time, the claimant had "no major complaints" (Exhibit 5F, page 56). On examination, the claimant exhibited no acute distress, normal spinal alignment, a normal gait, grossly intact sensation, 2+ deep tendon reflexes, and grossly intact motor strength (Exhibit 5F, page 58). It was noted that the claimant was doing well and continuing to improve (Exhibit 5F, page 59). On June 3, 2021, it was noted that the claimant had been doing more activities, such as raking (Exhibit 5F, page 60).

T. at 21 (*See* Dkt. No. 8-2).

12

Further, the ALJ analyzed the opinions of Drs. Jenouri, Meyer, Brauer, and Lawrence. *See* T. at 22-23 (*See* Dkt. No. 8-2). Dr. Jenouri opined that plaintiff "had moderate restrictions for . . . bending." T. at 22 (citing T. at 366) (*See* Dkt. Nos. 8-2, 8-7). The ALJ concluded that Dr. Jenouri's opinion was persuasive for the period prior to August 19, 2021, because it is supported by Dr. Jenouri's own examination of plaintiff and consistent with RPAC Carangelo's opinion and the medical evidence dated between December 1, 2020, to August 19, 2021. *See id*. at 23 (*See* Dkt. No. 8-2). Dr. Meyer opined that plaintiff could "frequently" stoop. *Id*. at 22 (citing T. at 63) (*See* Dkt. Nos. 8-2, 8-3). Dr. Brauer and Dr. Lawrence opined that plaintiff could "occasionally" stoop and crouch. *Id*. at 22-23 (citing T. at 79, 90) (*See* Dkt. Nos. 8-2, 8-3). The ALJ determined that these opinions are "partially persuasive as they relate to the period before August 19, 2021[,]" because they are "supported by a narrative rationale, and . . . highly consistent with one another[,] and somewhat consistent with the medical source statement issued by Dr. Jenouri." *Id*. at 23 (*See* Dkt. No. 8-2). The ALJ further explained that "these opinions seem optimistic even for the period prior to August 19, 2021, given that the claimant underwent back surgery in November 2020 and was in need of a reasonable recovery period thereafter," and were inconsistent with RPAC Carangelo's opinion. *Id*. (*See* Dkt. No. 8-2).

Additionally, the ALJ relied upon a December 21, 2020, treatment record from Alexander Carangelo, RPAC, who opined plaintiff could only lift ten-to-fifteen pounds. T. at 23 (citing T. at 716) (*See* Dkt. Nos. 8-2, 8-7). RPAC Carangelo's opinion did not identify any other limitations, including limitations in bending or stooping. *See id.* at 716 (*See* Dkt. No. 8-7). The ALJ found RPAC Carangelo's opinion to be supported by his own

13

examination and plaintiff's reported improvement post-spinal fusion surgery and consistent with Dr. Jenouri's opinion. T. at 23 (*See* Dkt. No. 8-2).

"[P]laintiff's argument[] amount[s] to a disagreement with how the ALJ weighed the evidence, which is within [the ALJ's] province to do." *Joseph J. B.*, 2024 WL 4217371, at *1 (quoting *Nichole K. v. Comm'r of Soc. Sec.*, No. 1:23-CV-858 (EAW), 2024 WL 3022592, at *7 (W.D.N.Y. June 17, 2024)) (internal quotation marks omitted); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *Tina W. v. Comm'r of Soc. Sec.*, No. 5:22-CV-15 (MAD), 2023 WL 157952, at *7 (N.D.N.Y. Jan. 10, 2023) (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("It is not the Court's function to reweigh the evidence on appeal, only to 'decide whether substantial evidence supports the ALJ's decision.'")). There is some evidence in the record to suggest that plaintiff was limited in engaging in repetitive stooping, but as sedentary work does not require repetitive stooping, the ALJ's failure to reference plaintiff's spine deformity or temporary use of a back brace in the context of his ability to stoop or bend amounts to harmless error. *See Debra Lanette P. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1634 (CFH), 2022 WL 1063169, at *12 (N.D.N.Y. Apr. 7, 2022) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (explaining that where there is "no reasonable likelihood that [the ALJ's] consideration of [a] . . . doctor's [ ] report would have changed the ALJ's determination . . . remand for consideration of the improperly excluded report is unnecessary[ ]").

## V. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby:

14

**ORDERED**, that plaintiff's cross-motion (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's cross-motion (Dkt. No. 16) is **GRANTED**, and the Commissioner's decision is **AFFIRMED**; and it is

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision & Order on all parties in accordance with Local Rules.

Dated:  March 18, 2026
            Albany, New York

_____
Paul J. Evangelista
U.S. Magistrate Judge

15